STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 KA 0726

STATE OF LOUISIANA

VERSUS

JOSHUA JAMES SIMON

Judgment Rendered: __**DEC 2 2 2022**__

* * * * *

Appealed from the
17th Judicial District Court
Parish of Lafourche, State of Louisiana
No. 581591

The Honorable Marla M. Abel, Judge Presiding

* * * * *

Kristine Russell                                    Attorneys for the State of Louisiana
District Attorney
Jennifer F. Richard
Joseph S. Soignet
Allie Fournet
Assistant District Attorneys
Thibodaux, Louisiana


Gwendolyn K. Brown                         Attorney for Defendant/Appellant,
Baton Rouge, Louisiana                     Joshua James Simon

* * * * *

BEFORE: WHIPPLE, C.J., GUIDRY AND WOLFE, JJ.

Whipple, C.J., concurs.

**WOLFE, J.**

The defendant, Joshua James Simon, was charged by amended bill of information with simple kidnapping of M.B.[1] (count I), a violation of La. R.S. 14:45; aggravated second degree battery of C.B. (count III), a violation of La. R.S. 14:34.7, and domestic abuse battery by burning of C.B. (count IV), a violation of La. R.S. 14:35.3(M)(1).[2] He pled not guilty on all counts. Following a jury trial, he was found guilty as charged by unanimous verdicts on all counts. The trial court denied the defendant's motion for new trial and sentenced him as follows: on count I, five years at hard labor; on count III, fifteen years at hard labor; and on count IV, three years at hard labor. The trial court ordered that the sentences be served consecutively and without the benefit of parole, probation, or suspension of sentence. The defendant made a motion for reconsideration of sentence, but the motion was denied. He now appeals,[3] raising six assignments of error. For the following reasons, we affirm the convictions on counts I, III, and IV; affirm the sentence on count IV, and vacate the sentence and remand for resentencing on counts I and III.

## FACTS

On October 21, 2018, C.S., the victim of the aggravated second degree battery and the domestic abuse battery by burning, drove to the defendant's house to return his belongings, as she and the defendant had ended a two-month intimate relationship the previous night. In the car with C.S. was her seven-month-old daughter, M.B., the

---

[1]    This case involves a crime victim who was a minor under the age of eighteen at the time of the commission of count I. Accordingly, we reference that victim and her relatives only by their initials. See La. R.S. 46:1844(W); **State v. Mangrum**, 2020-0243 (La. App. 1st Cir. 2/22/21), 321 So.3d 986, 989 n.1, writ denied, 2021-00401 (La. 10/1/21), 324 So.3d 1050.

[2]    The State entered a *nolle prosequi* on count II.

[3]    The trial court granted the defendant an out-of-time appeal. (R. 118). See **State v. Counterman**, 475 So.2d 336, 340 (La. 1985) ("While La. [Code Crim.] P. [a]rt. 930.3 does not expressly provide for the specific form of relief to be granted when the defendant loses his constitutional right to appeal without fault on his part, the court arguably has the inherent authority to grant the limited relief of an out-of-time appeal (as opposed to the usual relief of a new trial in successful post conviction applications).").

2

victim in count I. When C.S. arrived at the defendant's house, she knocked on the door. The defendant came to the door, cursed at her, spit in her face, and slammed the door. He subsequently reopened the door and asked C.S. to come inside with him. C.S. refused and began walking to her car. The defendant followed C.S., removed M.B. from the car, and took M.B. inside of his house. C.S. did not give the defendant permission to remove M.B. from the car.

C.S. followed the defendant into the house in order to get M.B. back. Once inside, the defendant placed M.B. on a chair in the living room. He then talked to C.S. and wanted her to follow him into the kitchen, which she did. While in the kitchen, the defendant slapped C.S. in the face twice, forced her to the floor, placed his hands around her neck, and choked her. C.S. was wearing a "cross necklace" around her neck, and the choking caused the cross to cut her. She still had the scar from the injury, which she showed the jury at trial.

The defendant subsequently dragged C.S. by her hair to his bedroom, where he repeatedly struck her with two leather belts. The defendant hit her so many times that one of the belts broke in half over her. C.S. fought back, but the defendant overpowered her. At some point, the defendant dragged C.S. by the hair to the bathroom. While in the bathroom, the defendant continued striking her with the belts while punching her in the face and burning her on the back with a cigarette. The cigarette left a burn mark, which was still present at the time of trial. Eventually, C.S., was able to grab M.B. and run to her car. Before she could leave, the defendant again removed M.B. from the car without C.S.'s permission and took M.B. back inside the house. C.S. followed the defendant into the house. The defendant then beat C.S. with the belts again for "a few hours," while also stopping and taking breaks throughout the attack.

After C.S. agreed to drive the defendant to get drugs, C.S. and M.B. left the house with the defendant. Following several stops, C.S. drove to her cousin's house,

3

to whom she explained everything, and who then called C.S.'s brother. Upon his arrival, C.S.'s brother saw the defendant, exited his truck, and chased the defendant with a bat. C.S.'s brother later returned to the cousin's house and advised C.S. of the defendant's location. The defendant ended up at a home on West Main Street, where he broke a window. Officers were dispatched to that location after they received reports of a residential burglary. When the officers arrived, the defendant was sitting on the porch of the residence. C.S. then traveled to West Main Street and reported the incident to the officers present.

At trial, C.S. testified she was in pain for days after the incident, struggling with normal activities, including being able to pick up her children, because her arms hurt too much. She further testified she had scars on her neck and back from the injuries inflicted by the defendant.[4]

On October 22, 2018, after being advised of his **Miranda**[5] rights by the Lafourche Parish Sheriff's Office, the defendant stated he only knew C.S. because he worked with M.B.'s father. The defendant stated he had not seen C.S. in approximately one to two days. He denied being in a relationship with C.S. and denied seeing her on October 21, 2018.

## FAIR AND IMPARTIAL JURY

In assignment of error number 1, the defendant contends the trial court erred by denying defense counsel's request to *voir dire* members of the jury venire on the effect that the defendant's outbursts had upon their partiality. In assignment of error number 2, the defendant contends the trial court erred by denying defense counsel's request to *voir dire* members of the jury regarding their knowledge of the cause for the defendant's removal and the effect that his absence would have upon their partiality.

---

[4] At trial, Officer Devin LeBouef testified that when C.S. arrived at the residence where the defendant had broken the window, she was "[c]overed pretty much head to toe in bruises and swelling."

[5] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4

In assignment of error number 3, the defendant contends the trial court erred by denying the motion for new trial. He combines these assignments of error for argument. Specifically, the defendant claims he was denied his right to be tried by a fair and impartial jury when the trial court: erred in returning jurors to the courtroom while it was still actively engaged in a heated debate with him; erred in denying defense counsel's request to strike the members of the panel that had witnessed the exchange; erred in refusing to allow defense counsel to speak with the members of the panel who had witnessed the exchange concerning the impact the exchange may have had on their impartiality; and erred in refusing to allow defense counsel the opportunity to discuss with those who had already been selected, their knowledge of the outburst and the effect of the defendant's absence on their deliberations.

The United States Supreme Court has held:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant ... (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

**Illinois v. Allen**, 397 U.S. 337, 343-44, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970).

Louisiana Constitution article I, section 17(A) sets forth, in pertinent part, "[t]he accused shall have a right to full *voir dire* examination of prospective jurors and to challenge jurors peremptorily." Thus, a defendant in a criminal case is constitutionally entitled to a full and complete *voir dire* examination and to the exercise of peremptory challenges. The court, the State, and the defendant shall have the right to examine prospective jurors. **State v. Mickey**, 626 So.2d 24, 26 (La. App. 1st Cir. 1993).

5

*Voir dire* is designed to discover grounds for challenges for cause and to secure information for the intelligent exercise of peremptory challenges. The scope of the *voir dire* examination is within the sound discretion of the trial court; therefore, those rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. A review of the trial court's rulings should be undertaken only on the record of the *voir dire* examination as a whole to determine whether the defendant was afforded a sufficiently wide latitude in his examination of prospective jurors. The trial court must afford the defendant a wide latitude in the exercise of this constitutionally guaranteed right. **Id.**

Although *voir dire* may not encompass unlimited inquiry into all possible prejudices of prospective jurors, the defendant in a criminal proceeding should, however, be allowed to make such inquiries that will enable him to secure his constitutional rights by eliciting facts which show grounds for challenges. His right to intelligently exercise cause and peremptory challenges may not be curtailed by the exclusion of non-repetitious *voir dire* questions which reasonably explore the prospective jurors' potential prejudices, predispositions, or misunderstandings, which are relevant to the central issues of the particular case. The scope of inquiry is best governed by a liberal discretion on the part of the court so that if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision, it may be discovered on *voir dire*. **Id.** at 26-27.

Louisiana Code of Criminal Procedure article 832, in pertinent part, provides:

> A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present ... and either of the following occur:
>
> . . .
>
> (2) After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he persists in conduct which justifies his exclusion from the courtroom.

During *voir dire* on the second day of trial, defense counsel requested a bench conference and alerted the trial court that the defendant "want[ed] to go back to the jail[.]" After the panel of prospective jurors were removed from the courtroom, the trial court denied the request, advising the defendant that since he had elected to have a jury trial, his presence in the courtroom was mandatory under the Criminal Code.[6] Additionally, the court cautioned the defendant:

> You will keep your behavior appropriate. I'll remind you that these are potential jurors and you will not be allowed to act out in any way that will potentially affect them and their ability to remain impartial, okay? These people have sat around for a day and a half now to try to give you a fair trial and you will not disrespect them. Do you understand?

The defendant did not answer the court and became argumentative.[7] The defense moved to strike the uncalled members of the jury pool, "due to the prejudicial comments that were made in their presence." The State argued there were no grounds to strike the entire jury pool, which was required to be there. The court denied the motion, ruling that "a defendant cannot intentionally try to taint a jury pool by acting out and it is the Court's opinion that that is what has happened in this matter." The defense objected to the ruling of the court.

Thereafter, the prospective jurors previously removed from the courtroom were returned to the courtroom. The defendant repeatedly interrupted the calling of names

---

[6]  See La. Code Crim. P. art. 831(A)(3) - (A)(6).

[7]  The court asked the defendant "Do you understand, sir?" The defendant answered, "Why you getting loud with me? You trying to take my life from me. For real." Thereafter, the court stated, "It's a yes or no question. Do you understand?" The defendant answered, "Nope." The court asked, "You don't understand that?" The defendant again replied, "Nope." Thereafter, the defendant interrupted the court as it cautioned him, "you will not act out in front of these jurors and then complain later that they were in any way tainted. Any way that you act, your behavior, your mannerisms, anything that you say in front of them is voluntary ..." The defendant replied, "What you gonna do, put hands on me? You can't do me nothing. You taking my life away from me already." The defendant continued to taunt the court, "What you gonna do?" The court told the defendant he had asked for a jury trial "and we are here to give you one." The defendant replied, "I didn't ask for nothing. I asked for Tracy Schwab to represent me and not f---in' lie to me. It's all this little short f---er's fault." The court advised the defendant, "We are going to bring the jurors in and we are going to pick them and you will not be disrespective or disruptive to anybody in this courtroom." The defendant then insisted that the court "go look at [the defendant's] two kids." The court told the defendant it would not argue with him and to stop talking. The defendant replied, "All right. I gotcha."

7

from the panel.[8] At a bench conference, the State set forth, "I don't think at this point you can kick [the defendant] out." Defense counsel stated, "At any point Your Honor would like to exercise your judicial discretion and have him removed, that would be fine." Thereafter, the entire jury pool was removed from the courtroom. The court then ruled:

> Okay, Mr. Simon, I previously warned you about your disruptive conduct. And at this time, you have now spoken in front of the jury pool and disrupted the roll call proceedings. So, the Court is going to order that you be removed from the courtroom given that you persisted in your conduct that I previously warned you to please refrain from.

Jury selection then continued in the defendant's absence, and the clerk resumed calling names for the next panel of prospective jurors. The defense moved to have the rest of the jury pool excluded from the courtroom during the questioning of the panel on the basis of "the prejudicial factor that if something is said during a particular panel." The motion was denied. The court cautioned the prospective jurors "while you're being asked questions, if there is anything that you discover that you know about this case, in particular about the defendant, or the victim, I would ask that you please not say it out loud." Jury selection was then completed without an additional panel of prospective jurors being called.

Defense counsel raised claims regarding these assignments of error in connection with the defendant's motion for new trial. Counsel argued the defendant was removed from the courtroom on the day following the seating of six jurors. Counsel claimed to have had no opportunity to examine the selected jurors "in terms of their knowledge of [the defendant's] removal from the courtroom or his absence from the courtroom and how his absence and [his] not being present [in the courtroom] would affect their judgment and a ruling in [the] case."

---

[8] The defendant stated, "Hey Mom, just go home, cause it's ... it's just for ... This really sucks. You can just go home. They're trying to give me life here. Just go home Mom. I love you. ... Just come visit me up the road. ... Just go home, Mom. You gonna be okay. Just go home."

8

The court found that the defendant's outburst occurred on the second day of trial, when the first six jurors were not present in the courtroom and "likely not even present in the building," as they were not due back until later in the day. The court further found:

> The court cannot foresee any fairness in allowing a defendant to intentionally behave in a certain way and then later say that [behavior is] prejudicial. It does not seem to be consistent with the fairness that is required in jury trials.
>
> The prospective jurors who [were] present in the courtroom were actually removed from the courtroom to allow the Court to advise [the defendant] that any outbursts would not be tolerated and that he was ordered to behave accordingly. The jurors were brought back in and [the defendant] made remarks to his mother, I believe, in front of the prospective jurors.
>
> The issue, as I recall, is that before the trial started, the defense did at a bench conference request to question the six [jurors] from the first day of trial about whether or not they had talked to any of the eight [jurors] selected at the second day of trial about the outburst. And this Court noted that both the six jurors selected on the first day and the eight jurors selected on the second day had all been ordered to not discuss the case with each other or anyone else until deliberations began.
>
> The Court also felt that beginning the process of questioning each [juror] one by one about anything they may have seen or heard about would only make the matter a bigger issue and confuse the jury even more. So, the Court assumed that the jurors did what they should have done, which was not speak to each other about the case before the deliberations began.
>
> The Court also will note that in the standard jury instructions that were given before deliberations, the Court told the jurors what the law is as it relates to a person's right to not testify. And they heard that instruction and they had all indicated that during *voir dire* that they would take the law and apply it as I told it to them.
>
> So, I don't believe that there was any prejudicial error in the failure to allow the defendant's counsel to speak to the six jurors from the first day individually about anything that they may have seen or may have heard regarding the defendant's conduct.

The defendant waived his right to be present in the courtroom by ignoring repeated warnings from the trial court that his disruptive behavior was not respectful of the prospective jurors and if he persisted in that behavior, he would be removed from the courtroom. Rather than heed the warnings, the defendant defied the court.

9

The trial court correctly found no prejudicial error in its ruling denying the defense request to individually speak to the six jurors selected on the first day of *voir dire* about anything that they may have seen or may have heard regarding the defendant's conduct. That conduct occurred outside the presence of the jurors. There was also no prejudicial error in denying the motion to strike the remaining members of the jury pool on the second day of *voir dire* "due to the prejudicial comments that were made in their presence." Jury selection was completed without the need to call any of these prospective jurors. A court has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. La. Code Crim. P. art. 17. The trial court faithfully performed its duty in this matter by ordering the removal of the defendant. The defendant's disruptive behavior and refusal to be present during the proceedings are in no way attributable to any error on the part of the trial court. See **State v. McCloud,** 2009-0911 (La. App. 1st Cir. 12/23/09), 2009 WL 5647222, *3 (unpublished).

These assignments of error are without merit.

## ILLEGAL AND EXCESSIVE SENTENCES

In assignments of error numbers 4, 5, and 6 respectively, the defendant contends the trial court erred by imposing consecutive sentences, that the sentences are illegally excessive, and the trial court erred by denying the motion to reconsider sentence. He combines the assignments of error for argument. He claims the trial court imposed illegal sentences on counts I, III, and IV by denying parole. He further claims the court imposed excessive sentences on those counts by imposing maximum sentences and ordering that they run consecutively with one another.

An illegal sentence is primarily restricted to those instances in which the *term* of the prisoner's sentence is not authorized by the statute or statutes which govern the penalty for the crime of conviction. **Montgomery v. Louisiana,** 577 U.S. 190, 196, 136 S.Ct. 718, 726, 193 L.Ed.2d 599 (2016); **State v. Murray,** 2019-1092 (La. App.

10

1st Cir. 5/11/20), 303 So.3d 655, 660. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. Code Crim. P. art. 882(A).

The Eighth Amendment of the United States Constitution and Louisiana Constitution article I, § 20 prohibit the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. **State v. Parker**, 2013-1050 (La. App. 1st Cir. 2/20/14), 2014 WL 687992, *2 (unpublished), writ denied, 2014-0631 (La. 10/24/14), 151 So.3d 601, cert. denied, 575 U.S. 941, 135 S.Ct. 1714, 191 L.Ed.2d 687 (2015). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. **Id.** A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. **Id.**

The Louisiana Code of Criminal Procedure sets forth items that must be considered by the trial court before imposing a sentence. La. Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. **Parker**, 2014 WL 687992 at *2.

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of

11

imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. Code Crim. P. art. 883. Thus, La. Code Crim. P. art. 894.1 specifically excludes from its scope sentences which the court expressly directs to be served consecutively. A trial judge retains discretion to impose consecutive penalties based on the offender's past criminality, violence in the charged crimes, or the risk he or she poses to the general safety of the community. **State v. Alexander**, 2021-1346 (La. App. 1st Cir. 7/13/22), 344 So.3d 705, 725. Although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. **Alexander**, 344 So.3d at 725-26. The failure to articulate specific reasons for imposing consecutive sentences does not require remand if the record provides an adequate factual basis to support the consecutive sentences. **Alexander**, 344 So.3d at 726.

## *RESTRICTION OF PAROLE*

Whoever commits the crime of simple kidnapping shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than five years, or both. La. R.S. 14:45(B). On count I, the trial court sentenced the defendant to five years at hard labor. Additionally, the court ordered the sentence to be served consecutively to the sentences imposed on counts III and IV and without benefit of parole, probation, or suspension of sentence.

The restriction of parole on count I, simple kidnapping, is not authorized by La. R.S. 14:45(B), and thus, is illegal. Accordingly, the sentence imposed on count I is vacated and this matter is remanded for resentencing on count I in accordance with law. Our disposition of this issue causes us to pretermit consideration of the defendant's claims of excessive sentence concerning count I.

Whoever commits the crime of aggravated second degree battery shall be fined not more than ten thousand dollars or imprisoned, with or without hard labor, for not

12

more than fifteen years, or both. La. R.S. 14:34.7(C). On count III, the trial court sentenced the defendant to fifteen years at hard labor. Additionally, the court ordered the sentence to be served consecutively to the sentences imposed on counts I and IV and without benefit of parole, probation, or suspension of sentence.

The restriction of parole on count III, aggravated second degree battery, is not authorized by La. R.S. 14:34.7(C), and thus, is illegal. Accordingly, the sentence imposed on count III is vacated and this matter is remanded for resentencing on count III in accordance with the law. Our disposition of this issue causes us to pretermit consideration of the defendant's claims of excessive sentence concerning this count.

In regard to domestic abuse battery, La. R.S. 14:35.3, in pertinent part, provides:

C. On a first conviction, notwithstanding any other provision of law to the contrary, the offender shall be fined not less than three hundred dollars nor more than one thousand dollars and shall be imprisoned for not less than thirty days nor more than six months. At least forty-eight hours of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence. Imposition or execution of the remainder of the sentence shall not be suspended unless either of the following occurs:

(1) The offender is placed on probation with a minimum condition that he serve four days in jail and complete a court-monitored domestic abuse intervention program, and the offender shall not own or possess a firearm throughout the entirety of the sentence.

(2) The offender is placed on probation with a minimum condition that he perform eight, eight-hour days of court-approved community service activities and complete a court-monitored domestic abuse intervention program, and the offender shall not own or possess a firearm throughout the entirety of the sentence.

. . .

M. (1) Notwithstanding any provision of law to the contrary, if the domestic abuse battery is committed by burning, the offender, in addition to any other penalties imposed pursuant to this Section, shall be imprisoned at hard labor for not more than three years.

On count IV, domestic abuse battery by burning, the trial court sentenced the defendant to three years at hard labor. Additionally, the court ordered the sentence to be served consecutively to the sentences imposed on counts I and III and without benefit of parole, probation, or suspension of sentence.

13

The restriction of parole on count IV is authorized by La. R.S. 14:35.3(M)(1), and thus, the sentence legally restricts parole. That statute provides that the penalty set forth is "in addition to any other penalties imposed pursuant to this Section." La. R.S. 14:35.3(C) provides, "[a]t least forty-eight hours of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence." See **State v. Ard**, 2020-221 (La. App. 5th Cir. 4/28/21), 347 So.3d 1046, 1060 (failure to restrict parole when imposing enhanced sentence for domestic abuse battery by strangulation, a violation of La. R.S. 14:35.3(L), required remand for resentencing "with instructions to the district court to impose defendant's enhanced sentence in accordance with the provisions of the underlying statute, La. R.S. 14:35.3(C), as it relates to the restriction of parole").

## *CONSECUTIVE SENTENCES*

Prior to imposing the sentence, the trial court found: there was an undue risk that during the period of a suspended sentence or probation, the defendant would commit another crime; the defendant was in need of correctional treatment or a custodial environment that could be provided most effectively by his commitment to an institution; and that a lesser sentence would deprecate the seriousness of the defendant's crimes. The court further found the defendant's conduct during the commission of the crimes manifested deliberate cruelty to the victim. The court noted "the injuries sustained by the victim in this case are so numerous and so serious that they were imposed with a significant amount of force and out of deliberate cruelty to the victim." Additionally, the court found the defendant used actual violence in the commission of the offense, and the victim suffered "numerous and ... severe" injuries from the defendant "over the course of some hours." Lastly, the court stated it was considering the defendant's history, his prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation.

14

Following imposition of sentence at the sentencing hearing, the defendant made an "oral motion"[9] that the sentence was excessive, arguing:

> considering ... the defendant's age[,] that he can be rehabilitated through anger management. Until this point in time, he has not had any rehabilitated (sic) effort. And that the crimes of violence will put him and the fact that the sentences are consecutive in jail for a significant amount of time that would outweigh any fairness under the law.

The State opposed the motion to reconsider sentence, arguing that the sentences were "very much appropriate for the crimes that were committed upon [the victim]." Additionally, the State set forth that the defendant's criminal history included battery charges against additional victims. The court denied the motion to reconsider sentence, noting the defendant had a significant criminal history with similar actions. Additionally, the court found the defendant had made no effort to avail himself of rehabilitative services that were available to him pretrial.

The trial court specifically found consecutive sentences were appropriate in this matter on the basis of the defendant's deliberate cruelty against the victim during the incident and the "extremely violent" acts he committed against her. The trial court also adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence on count IV. See La. Code Crim. P. art. 894.1 (A)(1), (A)(2), (A)(3), (B)(1), (B)(6), and (B)(21). Further, the sentence on count IV was not grossly disproportionate to the severity of the offense, and, thus, was not unconstitutionally excessive. Additionally, a maximum sentence was warranted in this matter. Maximum sentences may be imposed for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. **State v. Parker**, 2012-1550 (La. App. 1st Cir. 4/26/13), 116 So.3d 744, 754, writ denied, 2013-1200 (La. 11/22/13), 126 So.3d 478. A maximum sentence was appropriate because of the "numerous and ... severe"

---

[9]     Louisiana Code of Criminal Procedure article 881.1(A)(1) allows the State or the defendant to "make or file a motion to reconsider sentence."

15

injuries the defendant inflicted upon the victim, because the victim "endured these acts at the hands of the defendant over the course of some hours[,]" and because the defendant used the child of the victim to force her to enter his home and to prevent her from leaving.

This assignment of error is without merit.

**CONVICTIONS ON COUNTS I, III, AND IV AFFIRMED; SENTENCE ON COUNT IV AFFIRMED; SENTENCES ON COUNTS I AND III VACATED; REMANDED FOR RESENTENCING.**